IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:21-CR-00717 |
| | ) | |
| Plaintiff, | ) | JUDGE J. PHILIP CALABRESE |
| | ) | |
| v. | ) | |
| | ) | |
| ANDREW DODSON, | ) | GOVERNMENT'S SENTENCING |
| | ) | MEMORANDUM |
| Defendant. | ) | |

Now comes the United States of America, by and through its attorneys, Michelle M. Baeppler, Acting United States Attorney, and Brian S. Deckert, Assistant United States Attorney, and hereby files this sentencing memorandum. The Government agrees with the calculations contained within the Presentence Investigation Report filed March 10, 2022. (Doc. 29: PSR, PageID 128). The Government recommends a term of 12 months in accordance with the following memorandum.

I.  **OFFENSE CONDUCT AND GUIDELINE CALCULATION**

    A.  **Offense Conduct**

On July 23, 2021, the FBI received a phone call from Orange, Ohio, Fire Department that stated that the Orange Police Department had arrested an individual, later identified as the Defendant, for an alcohol-related driving offense. During the arrest and impounding of the vehicle, officers discovered a large cache of explosive precursors, including the following: Approximately 10 pounds of Potassium Perchlorate, Potassium Nitrate, powdered sugar, batteries, Vaseline, and a black tactical bag with the words "POLICE" on it containing ear protection and safety glasses.

FBI Special Agents interviewed the Defendant on the same day, while he remained in custody. The Defendant confirmed ownership of the items in his vehicle at the time of his

arrest and added that he used these materials to make smoke bombs for the 4th of July. He stated that he deployed the smoke bombs at his brother's house in Tallmadge, Ohio. The Defendant stated that he still had the materials in his vehicle at the time of his arrest because he had not yet had time to return them to his parents' residence, where he stores them. He denied ever manufacturing a destructive or explosive device.

Records obtained from a chemical company revealed that the Defendant had purchased a total of 50 pounds of Potassium Perchlorate between April 2020 and June 2020.

On July 29, 2021, FACEBOOK responded to a federal search warrant for the Defendant's Facebook profile by providing agents with its contents. A review of the information revealed the following: In July 2020, the Defendant had contact with user1. The Defendant told user1, "People call me the Unabomber" and sent a picture of his tattoo depicting such. He sent a picture of 157 improvised explosive devices and screenshots of a remote detonator and 12 radio antenna devices. The Defendant told user1 he had improvised claymores that contained approximately 1,000 BBs per device. He tried to sell user1 a "Punisher" style soft Armor and flamethrower and sent a picture of his young daughter holding the flamethrower.

On August 4, 2021, FBI agents executed a search warrant in Mogadore, Ohio. Items seized included a computer hard drive, a cell phone, an iPod, a "Punisher" tactical vest, a camouflage shotgun and magazine, and a black flame thrower. On the same date, agents executed a search warrant at a storage rental unit in Akron. Items seized included seven gas masks with four canisters, a shirt with a swastika, magazines, a remote detonator with the remote, desktop tower computers, a box of pyrotechnic signal shells and fusing with safety igniters, and a bag of pyrotechnic fuses.

On August 4, 2021, agents interviewed Witness1 who shares custody of her daughter with the defendant. She was shown photographs of a child holding a flame thrower (found through a search of the Defendant's Facebook application pursuant to a federal search warrant), confirmed it was her daughter, and identified the background as the Defendant's former apartment. She reported that she had observed the Defendant make items described as firecrackers and smoke bombs. She told agents the Defendant had tattoos of John Wayne Gacy and the Unabomber on his arm and had a swastika on his arm, which has since been partially concealed with a grenade tattoo. Witness1 stated that when they first met in 2013, she would have described him as "very racist." He shaved his head, wore boots with laces and red suspenders. She was not aware of him getting into fights or hurting anyone. Witness1 stated he had domestic violence issues when they were together and described him as "an alcoholic and unstable." She recalled in 2013 when he poured powder into a container and detonated an explosive, which left a big hole in the ground. She recalled a time, about a year earlier, when the Defendant was at her house and had 15 or 16 guns in his trunk. He claimed to her to have the paperwork to sell the guns. She stated Akron police arrived when he was attempting to sell the guns and took a black bag full of guns.[1]

On February 15, 2022, the Defendant sent multiple threatening electronic communications to the above witness due to the statements that she provided to law enforcement, including the following: "Youre a piece of s--t and i hope you f-----g die slowly, very soon. Wanna knowwhy im in trouble, becUse of you."; "Hopefully youll Be dead to

---

[1] The above offense conduct is restated from the final PSR paragraphs 9-14.

everyone soon you f-----g snitch"; "Youre why i got arrested. Youre why i lost my job. Because of your statements."; and "Youre dead.".  See attached Exhibit A.

### B. Guideline Calculation

The PSR set forth the following computation of the Defendant's advisory sentencing guidelines:

| **Group 1: U.S.S.G. § 1B1.11: False Statement Made to an Agency of the United States (Count 1)** | | |
|---|---|---|
| Base offense level | 6 | § 2B1.1(a)(2) |
| Obstruction of Justice | +2 | § 3C1.1 |
| **Subtotal** | **8** | |

The PSR details the extent of the Defendant's criminal history, of which only 2 points score, placing him in criminal history category II.  (Doc. 29: PSR, PageID 131).   With a level 8 and a criminal history category of II, the Defendant's guideline imprisonment range is 4-10 months and is in zone B (*Id.*, PageID 138).

### C. Breach of Plea Agreement

The above calculation is different than the calculation contained in the plea agreement, however, the Government believes it is appropriately calculated.  Specifically, the Government is requesting that this Honorable Court make a finding that the Defendant is not entitled to acceptance of responsibility and has breached the plea agreement and therefore the Government is released from its obligations.

Paragraph 17 of the plea agreement states that the USAO agrees to recommend a 2-level reduction for acceptance of responsibility under USSG § 3E1.1(a) ***provided Defendant's conduct continues to reflect his acceptance of responsibility and it is up to the Court.*** Application Note 4 of U.S.S.G. § 3E1.1 states "[c]onduct resulting in an enhancement under §3C1.1 (Obstructing or Impeding the Administration of Justice) ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct. There may, however, be

4

extraordinary cases in which adjustments under both §§3C1.1 and 3E1.1 may apply." This is not an extraordinary case such that the Defendant should receive acceptance of responsibility despite his obstruction of justice.

The Government also argues that the Defendant breached the plea agreement as set forth in paragraph 31 as he committed additional crimes and obstructed justice. Paragraph 31 states in pertinent part:

> Defendant understands that if Defendant breaches any promise in this agreement, commits additional crimes, obstructs justice, attempts to withdraw Defendant's guilty plea, or if Defendant's guilty plea is rejected by the Court or is vacated or set aside, the USAO will be released from all of its obligations under this agreement and may institute or maintain any charges and make any recommendations with respect to sentencing that otherwise would be prohibited under the terms of the agreement.

The Defendant has been indicted for a violation of 18 U.S.C. 1513(b)(2), Obstructing Justice by Retaliating Against a Witness, Victim, or an Informant, and 18 U.S.C. 875(c), Interstate Communications in case number 5:22CR115 and has therefore committed additional crimes and/or obstructed justice.

Wherefore, the Government requests this Honorable Court make a finding that the Defendant has breached the plea agreement and the Government is released from its obligations under the plea agreement and allowed to argue for the inclusion of the Obstruction of Justice enhancement and any upward variance as identified in the PSR.

## II. <u>SENTENCING FACTORS 18 U.S.C. § 3553(A)</u>

Upon properly calculating the advisory guideline range, this Court is required to follow 18 U.S.C. § 3553(a), which states:

> This Court is required to consider the following factors in determining the sentence.
>
> (a) Factors to be considered in imposing a sentence.--The court shall impose a sentence sufficient, but not greater than necessary,

>to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider--
>
>>(1)  the nature and circumstances of the offense and the history and characteristics of the defendant;
>>
>>(2)  the need for the sentence imposed--
>>
>>>(A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>>
>>>(B)  to afford adequate deterrence to criminal conduct;
>>>
>>>(C)  to protect the public from further crimes of the defendant; and
>>>
>>>(D)  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>>
>>(3)  the kinds of sentences available;
>>
>>(4)  the kinds of sentence and the sentencing range established for--
>>
>>(5)  any pertinent policy statement--
>>
>>(6)  the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>>
>>(7)  the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

The nature and circumstances of the Defendant's offense and his history and characteristics are important factors for this Court to consider when imposing a sentence. The Defendant is thirty-three years old and has numerous and repeated offenses for operating a motor vehicle while under the influence of alcohol. (Doc. 29: PSR, PageID 129-33). The Defendant currently still has the pending OVI that formed the impetus for this criminal investigation. (*Id.*,

PageID#132-33). Additionally, the Defendant has prior convictions for Assault and Contributing to the Delinquency of Minors. (*Id.*, PageID 130). On June 9, 2016, the Defendant was convicted of Disorderly Conduct for kicking Witness1 and possessed a firearm while intoxicated. (*Id.*, PageID 131). On September 16, 2016, the Defendant was convicted of Disorderly Conduct for ramming Witness1's motor vehicle with his vehicle while he was intoxicated. (*Id.*). On January 13, 2017, the Defendant was convicted of Open Container after he was found inside of his vehicle with an open can of alcohol, a knife, and a set of brass knuckles. (*Id.*).

The Presentence Investigation Report has identified two factors as possible grounds for an upward variance from the sentencing guidelines provisions. (*Id.*, PageID# 143). The first factor was the nature of the offense. Specifically, that the guidelines for the offense of Making a False Statement understate the seriousness of the offense as set forth in the offense conduct. The second factor for an upward variance is the history and characteristics of the Defendant. As set forth above, the number of unscored offenses and the underlying facts of the Defendant's convictions is not taken into account in a criminal history category score of 2.

Should this Honorable Court find that the Defendant has breached the plea agreement by committing additional offenses and/or obstructing justice, the Government would agree with the two grounds for an upward variance and request a sentence above the advisory guidelines. For example, if even 2 more points were scored for the Defendant's criminal history then his Criminal History Category would be a III and his guideline range would be 6-12 months.

### III. CONCLUSION

The Government requests this Honorable Court find that the Defendant breached his plea agreement and has not demonstrated acceptance of responsibility. Further, based on the serious nature of the offense conduct; the Defendant's lengthy and repeated criminal history; his commission of new offenses and obstructing justice while on pretrial supervision; and complete

lack of regard for the criminal justice system, the Government respectfully requests this Court sentence the Defendant above the advisory guideline range to a term of 12 months.

                                      Respectfully submitted,

                                      MICHELLE M. BAEPPLER
                                      Acting United States Attorney

By:   /s/ Brian S. Deckert
                Brian S. Deckert (OH: 0071220)
                Assistant United States Attorney
                United States Court House
                801 West Superior Avenue, Suite 400
                Cleveland, OH 44113
                (216) 622-3873
                (216) 522-8355 (facsimile)
                Brian.Deckert@usdoj.gov